**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Daniel Ayer

    v.                                        Civil No. 14-cv-261-JL

William Wrenn, Richard Gerry,
Christopher Kench, Jon Fouts,
John Hanson, and Robert Heath


## REPORT AND RECOMMENDATION


Pro se plaintiff Daniel Ayer, an inmate at the New
Hampshire State Prison ("NHSP"), has sued six defendants in
their individual capacities, under 42 U.S.C. § 1983, asserting
violations of his First and Eighth Amendment rights.  Pursuant
to LR 72.1, the defendants' motion for summary judgment (doc.
no. 81), to which plaintiff objects, is before this magistrate
judge for a report and recommendation as to disposition.


## Summary Judgment Standard

Summary judgment is warranted where "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also
Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir.
2016).  "An issue is 'genuine' if it can 'be resolved in favor

of either party,' and a fact is 'material' if it 'has the
potential of affecting the outcome of the case.'"  Xiaoyan Tang,
821 F.3d at 215 (internal quotation marks and citations
omitted); see also Commodity Futures Trading Comm'n v. JBW
Capital, LLC, 812 F.3d 98, 105 (1st Cir. 2016) ("'[T]he mere
existence of some alleged factual dispute between the parties
will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine
issue of material fact.'" (emphasis in original) (citation
omitted)).  At the summary judgment stage, the court draws "'all
reasonable inferences in favor of the non-moving party,' but
disregard[s] 'conclusory allegations, improbable inferences, and
unsupported speculation.'"  Fanning v. Fed. Trade Comm'n, 821
F.3d 164, 170 (1st Cir. 2016) (citation omitted).

To obtain summary judgment, "[t]he moving party must
affirmatively demonstrate that there is no evidence in the
record to support a judgment for the nonmoving party." Celotex
Corp., 477 U.S. 317, 332 (1986).  Once the moving party makes
the required showing, "'the burden shifts to the nonmoving
party, who must, with respect to each issue on which [it] would
bear the burden of proof at trial, demonstrate that a trier of
fact could reasonably resolve that issue in [its] favor.'"
Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016)

(citation omitted).  "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'"  Id. (citations omitted).  The nonmoving party's failure to prove one essential element "'necessarily renders all other facts immaterial.'"  Delgado v. Aero Inv. Corp., 601 F. App'x 12, 15 (1st Cir. 2015) (quoting Celotex, 477 U.S. at 323).  The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment."  Flovac, Inc., 817 F.3d at 853.

## Background[1]

### I.   Claims

Naming six defendants to this action, Ayer asserts two

---

[1]Defendants' memorandum of law in support of their motion for summary judgment does not "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which [they] contend[] there is no genuine issue to be tried."  LR 56.1(a).  Such a statement is required by the Local Rules of this court.  Defendants' failure to abide by LR 56.1(a) imposes a burden on the court, which must identify the facts, if any, that are undisputed before it can rule on their motion.  But, more importantly, defendants' failure also imposes a burden on plaintiff, who is obligated to produce a statement of factual disputes that require trial.  See LR 56.1(b).  Defendants' failure is particularly egregious in light of plaintiffs' pro se status.  Because plaintiff has not indicated that defendants' procedural failure has impaired his ability to respond to their motion, and because plaintiff has demonstrated an ability to understand and appropriately respond to the summary judgment motion, the court will proceed to the merits of that motion.

claims that have survived preliminary review.  First, Ayer
alleges that in June 2014, then NHSP Warden Richard Gerry and
NHSP Kitchen Supervisor Robert Heath, violated Ayer's First
Amendment right to petition the government for a redress of
grievances by terminating his employment in the prison kitchen,
in retaliation for Ayer's filing of this lawsuit.  See Pl.'s
Mot. to Amend (Doc. No. 11).  Next, Ayer alleges that Gerry,
Heath, Heath's Supervisor, Jonathan Hanson, NHSP Major Jon
Fouts, New Hampshire Department of Corrections ("DOC")
Commissioner William Wrenn, and DOC Director of Security and
Training Christopher Kench, violated Ayer's Eighth Amendment
right to safe conditions of confinement by exposing him to toxic
black mold in the NHSP kitchen.  See Pl.'s Mot. to Addend (Doc.
No. 21).

## II.  **Factual Background**[2]

Ayer started working in the NHSP kitchen in 2004.  Pl.'s
Mot. to Am. (doc. no. 27), 3.  In May and June 2014, Ayer was
employed in the "pots and pans area" of the NHSP kitchen, and
Robert Heath was his direct supervisor.  Id. at 5.  Ayer's

---

[2]In determining the undisputed facts in this case, the court
relied on the documents filed in this case as Document Nos. 1,
10, 11, 14, 17, 18, 21, 27, 29, 30, 32, 36, 41-43, 45, 48-53,
57, 58, 65, 71, 77, 81, 83, 85, 88, 90, 93, 94, 96, 97, 100-
102107, 108, 111, 112, 114, 117, 119, 120, 123, and 124, which
includes pleadings, motions, declarations, affidavits,
testimony, and other documents filed by the parties.

duties there included cleaning the pots and pans area and the kitchen equipment located in that area.  Id.

Regarding sanitation in the prison kitchen, the following testimony from Heath is largely undisputed:

> I conduct daily inspections of the kitchen.  Since my
> employment there, I have seen small amounts of mold
> growing in the kitchen and there have been reports
> made to me of mold growing.  However, when the mold is
> seen or reported, I instruct the inmates to clean the
> areas.  The mold is then effectively eliminated.
> Because of the general nature of the kitchen and the
> large amounts of water, small amounts of mold is not
> unheard of.
>
> In my position, I make sure that inmates receive
> cleaning supplies, as they are required to maintain
> the cleanliness of the kitchen.  Inmates clean the
> kitchen every day.  This includes spraying down the
> various areas; using comet, bleach (only under direct
> supervision), and paper towels to clean the various
> areas; and using mops, buckets, brooms, dust pans, and
> soap to do any further cleaning they see fit.
> Additionally, there is a daily inspection of the
> kitchen.

Aff. of Robert Heath (Doc. No. 81-5) ("Heath Aff."), ¶¶ 5-6.

Ayer first noticed mold on various surfaces in the prison kitchen in early 2014.  Pl.'s Mot. to Amend (Doc. No. 21), 2. When he showed Heath several cutting boards with mold on them and asked for something to clean them with, "Heath added some bleach to a sink with some water and plaintiff soaked and washed them."  Id.  Ayer then cleaned various other surfaces in the kitchen.  Id.  The mold returned.  Id.

In late May, Ayer told Heath that he thought there was

black mold in the pots and pans area.  Id.  Thereafter,
according to Heath:

> I inspected the area and while I agreed that there was
> a small amount of mold, I did not see any substantial
> amounts of mold.  I instructed two other inmates to
> clean the area.  I also instructed Mr. Ayer to
> properly clean the area and told him that it was "his
> job to clean" the area.  I provided Mr. Ayer with the
> proper cleaning supplies, including bleach.[3]

Heath Aff., ¶ 7.  Ayer and another inmate thoroughly cleaned the
pots and pans area.  Pl.'s Mot. to Amend (Doc. No. 21), 2.
Defendants have produced NHDC Food Service Inspection Forms,
indicating that the kitchen passed inspections by Heath or other
NHSP personnel every day in May and June 2014, except May 21,
June 4, and June 11, days for which no forms have been
submitted.  See Doc. Nos. 81-6 & 81-7.

By the first week in June, the mold had returned.  Pl.'s
Mot. to Amend (Doc. No. 21), 2.  On June 9, 2014, Ayer directed
an Inmate Request Slip ("IRS") to Heath in which he reported
that he had discovered black mold in the kitchen and asked Heath
to test the purported mold.  June 9, 2014, IRS (Doc. No. 81-3).
In the June 9 IRS, Ayer pointed out that "[t]he mold could be a
hazard," but did not claim that he had suffered any ill effects

---

[3]Ayer states that "defendant Heath did not provide bleach to
spray down the area and did not provide Comet to clean the Pots
and Pans Area."  Pl.'s Obj. (Doc. No. 83), 9.  However, for
reasons that will become evident in the analysis that follows,
this factual dispute is not material.

as a result of exposure to it.  Id.  Heath forwarded Ayer's IRS
to John Hanson, who was Heath's supervisor.  Id.  Hanson
replied: "This area needs to be cleaned, inmates are paid to
clean.  I will direct Bob Heath to oversee the cleaning."  Id.
It is undisputed that defendants neither tested the purported
mold nor had it professionally abated.  Pl.'s Resp. Summ. J.
(doc. no. 97), 14.

On June 28, 2014, Ayer directed a Grievance Form to Warden
Gerry.  Although Ayer had lost his job in the NHSP kitchen since
filing the June 9 IRS, in the June 28 Grievance, he asked for
testing of the purported black mold, but again, did not claim to
have suffered any ill effects from mold exposure.  June 28,
2014, Grievance Form (Doc. No. 81-11).  On July 14, 2014, Maj.
Fouts, who had them become the acting Warden of the NHSP,
responded to the June 28, 2014, grievance as follows:

> I see no issue with Administrator Hanson's response
> dated 6/11/14 regarding this matter . . . .  The
> Kitchen area is subject to the same level of oversight
> and inspection as any other commercial/institutional
> food service facility.  No harmful mold problem has
> been noted . . . .  You have not demonstrated that you
> have any particular expertise in this area and I have
> no reason to believe that Administrator Hanson's
> remedy isn't appropriate.  Your grievance is not
> sustained.

Id.

Ayer appealed Fouts's response in a grievance directed to
Commissioner William Wrenn.  July 20, 2014, Inmate Request Slip

(doc. no. 91-12).  Ayer again asked for testing and proper removal of the purported mold but did not claim to have suffered any ill effects from mold exposure.  Id.  On July 23, 2014, on behalf of DOC Commissioner Wrenn, Christopher Kench responded: "We support Major Fouts [sic] position."  Id.

### III. **Filing this Action**

Ayer filed his original complaint in this case on June 11, 2014, naming both Heath and (former) NHSP Warden Richard Gerry as defendants.  On June 12, 2014, while going through the kitchen mail with another DOC employee, Heath saw a copy of Ayer's complaint.  Heath Aff., 5.  On June 12, 2014, a NHSP kitchen employee notified Gerry of Ayer's complaint.  Aff. of Richard Gerry (doc. no. 81-16) ("Gerry Aff."), 4.  On June 13, 2014, Heath terminated Ayer from his NHSP kitchen job, at Gerry's direction.  Heath Aff., 5.  Heath testified that Ayer was terminated at that time because, in the complaint he saw on June 12, Heath read information leading him to believe that Warden Gerry, unbeknownst to Heath, had directed Ayer's termination in December 2013.  Id.  Once Heath confirmed that information with Gerry, Ayer was terminated.  Id.  Defendants have denied that the termination was related to Ayer's mold complaints.  Gerry Aff., 3.

On June 16, 2014, Ayer directed an IRS to Heath containing

8

the following request:

> Why have I been terminated from the Kitchen as of
> 6/13/14 and exactly who made the decision and when.
> Also why did you not stand up for me one of the best
> workers you had serving the Kitchen from 2004 til
> 6/13/14 and before.

June 15, 2014, IRS (doc. no. 81-24, 1).  On June 19, Heath

responded: "You were terminated on 06-13-14 per Warden Richard

Gerry.  Please address all future request slips to him."  Id.

On June 25, 2014, Ayer executed a motion to amend his

complaint in this case.  See Mot. to Amend (doc. no. 12).  In

it, he sought to add a claim that he was discharged from his

kitchen job in retaliation for filing his original complaint.

On June 28, Ayer directed two IRSes to Warden Gerry.  One

of them contains the following request:

> Why have I been terminated from the Kitchen per Warden
> on 06-13-14 as the attached copy of the 6/15/14
> Request Slip states.  I served you well and would like
> to be placed back in the Kitchen here and continue
> serving you well with the same rate of pay and same
> position as when I left.

June 28, 2014, IRS (doc. no. 81-24, 2).  The second IRS is a

copy of Ayer's motion to amend.  Id. at 3-6.  Warden Gerry

responded to both IRSes on July 1.  In response to the first

one, he wrote:

> Since you have initiated litigation in this matter, no
> further comment is warranted.  You did not exhaust
> your administrative remedies before filing your
> litigation.

Id.  In response to the second IRS, Warden Gerry wrote:

> Since litigation has been initiated without attempting
> to address matters through administrative remedies, no
> further consideration is warranted at this point.

Id. at 3.

On July 12, Ayer filed a Grievance Form with Maj. Fouts.

He described his grievance this way:

> I am grieving being terminated from the Kitchen on 06-
> 13-14.  The resolution I am seeking is to be placed
> back in the Concord State Prison Kitchen at the same
> rate of pay and the same position and compensated for
> any pay lost from 06-13-14 until the present.  I can
> withdraw relief sought by injunction if you wish to
> resolve this issue by administrative remedies.

July 12, 2014, Grievance Form (doc. no. 81-24, 7).  On July 14,

2014, Maj. Fouts responded:

> I believe that Warden Gerry has been clear in his
> previous communication with you that he has no further
> comment regarding this matter as you have already
> filed with the courts seeking relief.

Id.  On July 26, 2014, Ayer appealed to the Commissioner, and

Kench responded: "We concur with Warden Gerry's response.  Your

Grievance is denied."  July 26, 2014, Grievance Form (doc. no.

82-1, 3).


## Discussion

### I.  Ayer's First Amendment Claim

Ayer claims that Gerry and Heath violated his First

Amendment right to petition the government for a redress of

grievances by discharging him from his job in the prison kitchen in retaliation for filing this lawsuit.  Defendants argue that they are entitled to summary judgment because: (1) Ayer failed to exhaust his administrative remedies; (2) they are entitled to qualified immunity; and (3) they are entitled to judgment as a matter of law, on the merits, on the undisputed factual record. Defendants' first argument is persuasive and dispositive.

   A.   Exhaustion

   Under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  To exhaust administrative remedies under the PLRA, a prisoner must complete the administrative review process available at the place where he is confined, in accordance with the applicable procedural rules of that facility.  See Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Jones v. Bock, 549 U.S. 199, 218 (2007); Woodford v. Ngo, 548 U.S. 81, 93 (2006).  The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

11

Exhaustion is mandatory, and claim must be dismissed if exhaustion exhaustion of that claim is not completed prior to the filing of the claim.  See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).  At summary judgment, to prevail on the affirmative defense of failure to exhaust, "the defendant must show that no reasonable jury could find that [the plaintiff] exhausted the administrative remedies available to him before commencing [his] action."  Polansky v. McCoole, No. 13-cv-458-JL, 2016 WL 237096, at *3 (D.N.H. Jan. 20, 2016).

B.   DOC Administrative Grievance Procedures

At all times relevant to this matter, the DOC employed a three-level procedure for handling inmate grievances.  The first level is an IRS "addressed to the lowest level staff person with the authority to address the issue raised."  N.H. Policy & Procedure Directive ("PPD")1.16 (doc. no. 81-4), 2.  "A request slip regarding any issue must be received within 30 calendar days of the date on which the event complained of occurs."  Id. An inmate dissatisfied with the response to an IRS may, within thirty days of the denial of the IRS, direct a Grievance Form to the NHSP Warden.  Id. at 3.  An inmate dissatisfied with the Warden's response to his grievance, within thirty days of the denial of his grievance to the Warden, may appeal the matter to the DOC Commissioner.  Id. at 4.

12

C.   Failure to Exhaust First Amendment Claim

Here, no reasonable jury could find that Ayer had exhausted his First Amendment claim, through the administrative remedies available to him, before he initiated that claim in this action. Ayer first raised his First Amendment claim, at the latest, on July 1, 2014, when his motion to amend (doc. no. 12) was docketed in this case.  Viewing the facts in the light most favorable to Ayer, at the time he commenced this action, he had completed the second level of the DOC's three-level grievance process.  Ayer did not submit his third-level appeal to the DOC Commissioner until July 26, 2014, more than three weeks after he filed his claim here.  It is therefore undisputed that Ayer failed to properly exhaust the administrative remedies available to him for his First Amendment claim prior to filing it here.

Ayer does not argue to the contrary but, rather, "object[s] to the Defendants introducing failure to Exhaust Administrative Remedies at this time," and notes that "the Warden did not file an objection with the court about the 6/26/14 Motion to Amend." Pl.'s Obj. (Doc. No. 83), 18-19.  The court understands Ayer to be arguing that defendants waived their right to assert an exhaustion defense.

When Ayer executed his June 25, 2014, motion to amend, which was docketed on July 1, 2014, the defendants were not yet

13

parties to this case, and thus could not have objected to that motion.  Also, in their timely answer to Ayer's complaint, defendants specifically raised the affirmative defense of failure to exhaust, see Answer (Doc. No. 33), 12, which was sufficient to preserve their right to raise that defense at summary judgment.  See Fed. R. Civ. P. 12(b).  Thus, defendants have not waived that argument.

Ayer further argues that he has found nothing in the PLRA or the caselaw interpreting that statute to suggest that the exhaustion requirement applies to requests for injunctive relief.  The PLRA, however, provides that "[n]o action shall be brought with respect to prison conditions" prior to the exhaustion of the plaintiff's administrative remedies.  42 U.S.C. § 1997e(a) (emphasis added).  "Prisoners seeking injunctive relief and those seeking damages are each required by the PLRA to exhaust internal grievance procedures."  Amador v. Andrews, 655 F.3d 89, 95 (2d Cir. 2011) (citing, generally, Booth v. Churner, 532 U.S. 731 (2001)).

Ayer did not properly exhaust the administrative remedies available to him before he filing his First Amendment claim, and the defendants have not waived their exhaustion defense.  Accordingly, defendants are entitled to judgment as a matter of law on Ayer's First Amendment claim.

## II.   Ayer's Eighth Amendment Claims

Defendants move for summary judgment, arguing that they are
entitled to judgment as a matter of law on the merits of the
Eighth Amendment claim, on the undisputed factual record.
Plaintiff's contentions to the contrary are unavailing, for
reasons stated below.

### A.   Eighth Amendment Standard

"The Eighth Amendment . . . prohibits the infliction of
cruel and unusual punishments," Glossip v. Gross, 135 S. Ct.
2726, 2737 (2015), and "requires that inmates be furnished with
the basic human needs, one of which is 'reasonable safety.'"
Helling v. McKinney, 509 U.S 25, 33 (1993) (citation omitted).
The Eighth Amendment entitles inmates to protection from
hazardous conditions of confinement that have caused, or that
create, "[a] significant risk of future harm" to them.  Kosilek
v. Spencer, 774 F.3d 63, 85 (1st Cir. 2014) (citing Helling, 509
U.S. at 35).  The requirements imposed by the Eighth Amendment
apply both to general conditions of confinement and to prison
workplace conditions.  See Franklin v. Kan. Dep't of Corrs., 160
F. App'x 730, 736 (10th Cir. 2005).  "In the [prison] workplace
safety context, . . . mere negligence or inadvertence is
insufficient to constitute deliberate indifference."  Stephens

v. Johnson, 83 F.3d 198, 200 (8th Cir. 1996); Estelle v. Gamble,

429 U.S. 97, 104-06 (1976)).

To state an Eighth Amendment claim, plaintiff must satisfy

both an objective component and a subjective component.  See

Wilson v. Seiter, 501 U.S. 294, 298 (1991).  To establish the

objective component of an Eighth Amendment claim, the conditions

at issue must be so "extreme" as to have deprived the plaintiff

of "the minimal civilized measure of life's necessities."

Hudson v. McMillian, 503 U.S. 1, 9 (1992).

An inmate establishes the subjective component of a

conditions-of-confinement claim by demonstrating that prison

officials acted with deliberate indifference to his health or

safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

> Deliberate indifference requires (1) that the official
> . . . be aware of facts from which the inference could
> be drawn that a substantial risk of serious harm
> exists, and (2) that he draw that inference.  A
> factfinder can conclude that a government official was
> aware of a substantial risk of serious harm based on
> the fact that the risk was obvious.  However, there is
> no deliberate indifference if an official responds
> reasonably to the risk.

Miranda-Rivera v. Toledo-Dávila, 813 F.3d at 64, 74 (1st Cir.

2016) (internal quotation marks and citations omitted).  To act

with deliberate indifference, a defendant must have a

"purposeful intent" to deny plaintiff safe conditions of

confinement, or must show "wanton disregard" for an objectively

16

serious risk to plaintiff's health or safety.  Cf. Perry v. Roy, 782 F.3d 73, 79 (1st Cir. 2015)

    B.   Defendants Fouts, Kench, Gerry, and Wrenn

Ayer alleges that defendants Fouts, Kench, Gerry, and Wrenn have violated his Eighth Amendment rights by engaging in the following conduct:  Maj. Fouts, after receiving Ayer's second-level grievance after June 28, 2014, did not inspect the pots and pans area, question the inmates who worked there, or have the mold tested or professionally abated; Kench, after receiving Ayer's third-level appeal, thereafter, did not question the inmates who worked in the pots and pans area, or have the mold tested or professionally abated; and, both Warden Gerry and Commissioner Wrenn, knowing of the allegations in this lawsuit, did not have the mold tested or professionally abated.

Ayer last worked in the prison kitchen on June 14, 2014. He filed his second-level grievance two weeks later, on June 28, 2014.  Thus, nothing that defendants Fouts or Kench did, or did not do, in response to Ayer's second-level grievance, or his later-filed third-level appeal, could possibly have resulted in Ayer's being exposed to black mold.

Ayer's original complaint in this matter was filed on June 11, 2014, but did not include any allegations regarding mold in the kitchen.  Ayer asserted those allegations for the first time

in a complaint addendum docketed on August 13, 2014 (doc. no. 21).  The record is devoid of evidence suggesting that defendants Gerry or Commissioner Wrenn knew of the mold before Ayer grieved those issues, which occurred after his termination on June 14, 2014.  No reasonable jury could find that anything Warden Gerry or Commissioner Wrenn did, or did not do, prior to Ayer's termination in June 2014, could have manifested deliberate indifference to Ayer's exposure to black mold, as there is no evidence suggesting that those defendants had any knowledge of the existence of mold before Ayer was terminated.

Accordingly, Ayer has not demonstrated that there is a triable issue of fact as to any Eighth Amendment claim against Fouts, Kench, Gerry, or Wrenn.  Those defendants are entitled to judgment on those claims as a matter of law.

C.   Defendants Heath and Hanson

Under the circumstances of this case, for Ayer to establish that any defendants had sufficient knowledge of a risk to Ayer to be deliberately indifferent to that risk, Ayer must establish that defendants "actually knew the alleged black mold was present in sufficient quantities to present an excessive risk to the health of inmates."  Sumpter v. Crib, Civil Action No. 8:14-180-MGL-JDA, 2015 U.S. Dist. LEXIS 6990, at *16, 2015 WL 3400437, at *6 (D.S.C. May 1, 2015), R&R approved by 2015 U.S.

Dist. LEXIS 68217, 22015 WL 3400437, at *1 (D.S.C. May 27, 2015); see also Morales v. White, No. 07-2018-STA-dkv, 2008 U.S. Dist. LEXIS 80659, at *60, 2008 WL 4585340, at *15 (W.D. Tenn. Oct. 10, 2008) ("Plaintiff has not come forward with sufficient evidence to raise a triable issue of fact about whether Defendants actually knew the mold in the SHU contained allergens and was present in sufficient quantities to present an excessive risk to the health of inmates.").

Here, it is undisputed that Heath and Hanson knew that there was some amount of some kind of mold in the prison kitchen.  The court assumes, without deciding, that the mold was of the sort that posed a risk to Ayer's health and safety. Plaintiff has produced no evidence, however, to demonstrate that defendants actually knew either that: (1) the mold was a harmful type of mold; or (2) if the mold was harmful, that the amount of mold in the kitchen was sufficient to present a health risk that was excessive, rather than tolerable.

Ayer first argues that defendants can be deemed to have known of the character of the mold in the kitchen because the risk it posed was obvious.  While it was obvious to the defendants that the kitchen had some mold, Ayer has failed to show that any harmful nature the mold possessed was obvious. Ayer's expressed concerns are insufficient to constitute

knowledge on the part of the defendants, who were not inclined to accept Ayer's assertions as expertise on the subject of mold.

Ayer also states that in reality television shows that he has seen, statements have been made indicating that the presence of any mold in a building poses a potentially significant risk to those in the building.  Even if that assertion were true, such a conclusion made by someone on a television show is not enough to attribute actual knowledge to Heath and Hanson about the risk posed by the mold in the NHSP kitchen.  Ayer has failed to overcome the undisputed specific declarations of the defendants indicating that they did not know that the mold in the kitchen was black mold, and that they don't know if it presented any risk, much less an excessive risk, to Ayer's safety.  See Heath Aff. at 3; Aff. of Jonathan Hanson ("Hanson Aff."), 3.

Ayer further attempts to assert that the court may find that he can demonstrate deliberate indifference based on the fact that the defendants still have not had the mold tested or professionally abated.  Ayer argues that deliberate indifference can be found where a lawsuit makes a defendant aware of a danger, and the defendants still fail to respond to that danger. Even if an argument could be made in certain contexts that a defendant's subsequent failure to act provides some evidence of

the defendant's prior state of mind, that argument is unavailing here.  In short, Ayer has produced no facts from which a reasonable jury could conclude that Heath or Hanson knew that the kitchen had toxic mold that "was present in sufficient quantities to present an excessive risk to the health of inmates," at the time Ayer worked in the kitchen.  Sumpter, 2015 U.S. Dist. LEXIS 6990, at *16, 2015 WL 3400437, at *6.

Finally, even if plaintiff had created a triable issue concerning defendants' knowledge of a dangerous condition in the prison kitchen, he has produced no evidence from which a reasonable jury could conclude that their response to that condition was unreasonable.  In the discussion that follows, the court begins with the NHSP's general approach to dealing with mold in the kitchen and then turns to the specific responses by Heath and Hanson to Ayer's complaints about mold.

It is undisputed that the prison kitchen was cleaned and inspected daily, and was also subject to periodic inspections by the New Hampshire Division of Public Health Services.  Numerous courts have ruled that a plaintiff cannot establish deliberate indifference to risks posed by mold in areas of a penal institution that are subject to daily inspection and/or cleaning.  See, e.g., Bland v. Rubenstein, No. 5:11CV157 (STAMP), 2013 U.S. Dist. LEXIS 29311, at *13, 2013 WL 812354, at

*4 (N.D. W. Va. Mar. 5, 2013) (dismissing plaintiff's claim on grounds that plaintiff could not show deliberate indifference when, among other things, showers where plaintiff detected mold were cleaned and inspected daily); Jinks v. Medlin, No. CV 313-068, 2015 U.S. Dist. LEXIS 103992, at *63-*65, 2015 WL 4716050, at *24 (S.D. Ga. Aug. 7, 2015) (recommending grant of summary judgment to defendants on mold-related Eighth Amendment claim where it was undisputed that, among other things, jail was inspected daily by staff and subject to outside inspections), R&R adopted by 2015 U.S. Dist. LEXIS 122410, 2015 WL 5359558 (S.D. Ga. Sept. 14, 2005); Watson v. Stovall, No. 4:12-cv-4028, 2014 U.S. Dist. LEXIS 31897, at *19, 2014 WL 957392, at *9 (W.D. Ark. Feb. 14, 2014) (recommending summary judgment on Eighth Amendment claim alleging presence of black mold in shower area where it was undisputed that "showers were cleaned daily . . . [and] were cleaned monthly using [a] pressure washer"), R&R approved by 2014 U.S. Dist. LEXIS 31894, 2014 WL 957392, at *2 (W.D. Ark. Mar. 12, 2014).  Here, the undisputed fact that the kitchen was cleaned and inspected daily substantially undercuts plaintiff's ability to prove that defendants failed to reasonably respond to any known risk posed by the mold in the kitchen.

It is undisputed that: (1) when Ayer told Heath about mold
in the kitchen, Heath directed several inmates, including Ayer,
to clean the surfaces on which mold was found; and (2) when
Heath forwarded Ayer's IRS to Hanson, Hanson directed Heath to
direct the inmates under his supervision to clean any areas
where mold was found.  So, the undisputed factual record
demonstrates that neither Heath nor Hanson failed to respond to
a report of mold in the kitchen and that they took affirmative
action to clean up the mold that was reported.  The prompt
action Heath and Hanson took in response to Ayer's complaints
about mold in the kitchen preclude Ayer from showing that either
defendant was deliberately indifferent to any risk posed by the
presence of mold.

The only aspect of Hanson's and Heath's response that gives
the court pause is the fact that their corrective action
involved having Ayer (and his fellow inmates) perform the
cleanup.  On that score, Ayer argues:

> Defendants [concede] that exposure to mold can be
> sufficiently serious and hazardous to an inmate's
> health, yet ordered Plaintiff to clean the Black mold
> after Plaintiff made a reasonable request to have the
> Black mold tested[,] ignoring the substantial risk of
> serious harm to the plaintiff [when] Robert Heath
> order[ed] plaintiff to clean the mold.

Pl.'s Obj. (Doc. No. 83) 4; see also id. at 5 ("Here the
defendants admit that they were aware [that] Black Mold is

sufficiently serious and hazardous yet refused to test and ordered the plaintiff to be exposed to the Black mold.").

Ayer correctly points out that "[d]efendants do not dispute that certain conditions in a prison setting, including exposure to extreme amounts of mold, can be sufficiently serious and hazardous to an inmate's health."  Defs.' Mem. of Law (Doc. No. 81-1).  The general proposition that exposure to mold can give rise to an Eighth Amendment violation in some circumstances, however, is insufficient to overcome Ayer's failure to produce evidence that the mold he encountered was a harmful type of mold or was present in a large enough concentration to create a serious health hazard.  Moreover, absent evidence that either Heath or Hanson knew that the mold posed a substantial health risk, as opposed to a possible risk, ordering Ayer to clean it up did not constitute deliberate indifference to his health and safety.[4]

---

[4]Ayer, citing Billman v. Ind. Dep't of Corrs., 56 F.3d 785, 788 (7th Cir. 1995), analogizes Heath's and Hanson's actions, in making Ayer and other inmates clean up mold in the kitchen without first having the mold tested to determine its toxicity, to an officer placing an inmate into a cell, knowing that there is a snake in the cell, but not knowing whether the snake is venomous.  In Billman, the court stated:

> [T]o be guilty of 'deliberate indifference' [prison
> employees] must know they are creating a substantial
> risk of bodily harm.  If they place a prisoner in a
> cell that has a cobra, but they do not know that there
> is a cobra there (or even that there is a high

In short, just as Ayer has failed to produce evidence sufficient to establish the knowledge element of deliberate indifference, he has not produced evidence from which a reasonable jury could conclude that defendants failed to respond reasonably to the potential risk posed by the presence of mold in the prison kitchen.  Therefore, he has not created a trialworthy issue on the subjective element of his conditions-of-confinement claim, and defendants Heath and Hanson are thus entitled to judgment on the claims as a matter of law.

### Conclusion

For the foregoing reasons described above, the district judge should grant defendants' motion for summary judgment (doc. no. 81).  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See

---

probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk. . . .  But if they know that there is a cobra there or at last that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.

Id. (internal citations omitted).  The analogy would be apt if the defendants were aware that the mold was toxic, or that there was a high probability that the mold was toxic, and still directed the inmates to clean it without providing them proper protection.  Ayer has not demonstrated that there is a triable issue of fact as to whether defendants were aware of any likelihood that the mold in the kitchen was toxic.

Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).

_____
Andrea K. Johnstone
United States Magistrate Judge


July 28, 2016

cc:   Daniel Ayer, pro se
      Megan A. Yaple, Esq.
      Laura E. B. Lombardi, Esq.